IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL JERMAINE KEMP, 3RD, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 14-3819 |
| | : | |
| v. | : | |
| | : | |
| PICC, CORRECTIONAL OFFICER MR. | : | |
| R. GREY #4382, CORRECTIONAL | : | |
| OFFICER MR. GARCIA, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                    March 22, 2016

This action under 42 U.S.C. § 1983 involves a *pro se* prisoner plaintiff claiming that two correctional officers violated his constitutional rights when they assaulted him while responding to a fight between the plaintiff and another inmate in August 2012.  To date, the Marshal's Service has been unable to serve one of the correctional officers due to the identifying information provided by the plaintiff.  The court entered an order requiring the plaintiff to show cause why the court should not dismiss the claims against this correctional officer under Rule 4(m) of the Federal Rules of Civil Procedure.  It is unclear if the plaintiff responded to this order, but even if he did, he has not provided any justification for not dismissing this defendant under Rule 4(m).

As for the other correctional officer, he has moved for summary judgment arguing that the plaintiff failed to exhaust his administrative remedies before bringing suit.  The plaintiff appears to have responded to the motion, but his response, similar to his other submissions in this case, is almost entirely illegible.  Nonetheless, the court has considered the entirety of record (the majority of which is attached to the motion for summary judgment) and viewed it in the light

most favorable to the plaintiff.  This record demonstrates that there is no genuine issue of fact as to whether the plaintiff failed to exhaust his administrative remedies prior to commencing this action.  The plaintiff failed to exhaust and, as such, the moving defendant is entitled to summary judgment in his favor.

## I.      PROCEDURAL HISTORY

The *pro se* plaintiff, Samuel Jermaine Kemp, 3rd, commenced this action by filing an application to proceed *in forma pauperis* ("IFP Application") and a proposed complaint on or about June 18, 2014.[1]  Doc. No. 1.  The proposed complaint is a purported action under 42 U.S.C. § 1983 against the defendants, the Philadelphia Industrial Correctional Center ("PICC"), "Correctional Officer Mr. R. Grey #4382" ("Grey"), and "Correctional Officer Mr. Garcia" ("Garcia").  Doc. No. 1-2.  On June 25, 2014, the court denied the IFP Application without prejudice because the plaintiff failed to file a certified copy of his prisoner account statement.  Doc. No. 2.  The plaintiff submitted a copy of his account statement on or about July 25, 2014.  Doc. No. 3.

The court entered an order on August 4, 2014, in which the court, *inter alia*, (1) granted the IFP Application and gave leave to the plaintiff to proceed *in forma pauperis*, and (2) dismissed the claims against the PICC because it is not a "person" amenable to suit under section

---

[1] The federal "prisoner mailbox rule" provides that a *pro se* prisoner's petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 275-76 (1988).  Although the doctrine arose in the context of habeas corpus petitions, the United States Court of Appeals for the Third Circuit has extended it to civil actions brought under 42 U.S.C. § 1983.  *See Pearson v. Secretary Dep't of Corr.*, 775 F.3d 598, 600 n.2 (3d Cir. 2015) (applying rule in section 1983 action and determining that *pro se* prisoner plaintiff filed complaint on date he signed it).

Unfortunately, it is impossible for the court to discern when the plaintiff provided the IFP Application and the complaint to prison officials for mailing to the clerk of court.  The plaintiff included a verification with the complaint indicating that he provided it to prison officials for mailing in February 2014.  *See* Doc. No. 1-2 at ECF p. 9.  The court cannot use this reference as the date of filing because (1) it does not include a day of the month and, more importantly, (2) the plaintiff attaches two grievance forms to the complaint and one of them is dated May 16, 2014.  *Id.* at ECF pp. 10-12.  As the date of this second grievance is May 16, 2014, the plaintiff could not have provided the document to prison officials for mailing approximately three months prior to filing the grievance.

1983. *See* Order at 1-2 & n.1, Doc. No. 4. On the same date, the clerk of court docketed the complaint.

As indicative of all of the plaintiff's submissions in this matter, the complaint is very difficult to read due to the plaintiff's extremely poor handwriting. The complaint, however, is probably the easiest of all of the plaintiff's submissions to read and, as such, the court was able to ascertain what appeared to be the essence of the plaintiff's claims. In this regard, it appears that in the morning of either August 27, 2012, or August 29, 2012, correctional officers at the PICC were responding to a fight on the A-Unit (which the plaintiff identifies as the mental health unit) at the prison. Complaint at ECF pp. 3, 4, Doc. No. 5.[2] The plaintiff claims that the correctional officers (presumably, the correctional officer defendants) assaulted him while he was restrained. *Id.* As part of the assault, Grey choked the plaintiff and Grey and Garcia punched and kicked the plaintiff's face and body.[3] *Id.* at ECF p. 3. The plaintiff suffered injuries, including partial hearing loss, impairment with his sight, "taste toiletries,"[4] and sleep disorders. *Id.*

The plaintiff alleges that he filed a grievance in the PICC with respect to this incident, and he also reported it to the Federal Bureau of Investigation and the State Police. *Id.* at ECF pp. 4, 5. He asserts that there was no "highest level of grievance procedure," so he "just kept writing outside FBI [and] State Police." *Id.* at ECF p. 4. He also states that he has generally been filing grievances for the 2½ years that he has been incarcerated at the PICC. *Id.* at ECF p. 5.

The plaintiff attached two "REQUEST TO STAFF" forms to the complaint. *Id.* at ECF pp. 9-12. The first request form is dated "3/30/2014," and appears in pertinent part to relate to

---

[2] Many of the submissions in this matter do not contain page numbers; therefore, when necessary, the court refers to the page number as paginated by the electronic case file system.

[3] Although not identified as a defendant, the plaintiff also refers to a correctional officer Johnson who "rushed in to help" and was "humping [him] in [his] ass." Complaint at ECF p. 3.

[4] The plaintiff does not identify what type of injury this is.

his need to communicate with an insurance investigator and his request to have a staff member sign his section 1983 complaint.  *Id.* at ECF p. 9.  An unidentified social worker appears to have signed the form and responded to the request by stating the following:  "SW already addressed this concern with you several times.  You can write Allstate a letter."  *Id.*  The second request form is dated "5/16/14," and indicates in pertinent part:  (1) the plaintiff wanted to meet with his city social worker to discuss why he had not been paid for his work performed during the week of May 8, 2014; (2) the plaintiff needed to call the Allstate insurance investigator; and (3) the plaintiff was still awaiting a response from a prior request to staff to have a staff member sign his section 1983 complaint and he needed his account balance.  *Id.* at ECF p. 11.  The plaintiff received a signed response from an unidentified social worker, which stated:

> I have addressed this issue with you several times.  Any LEGAL documents must be sent to the City Attorney . . .  SW is not authorized to sign.  Any pay for work is handled by the . . . you work for.  SW has given you [sic] calls to the numbers above.  You can contact these people in writing.

*Id.*

Although the Marshal's Service attempted to serve Grey and Garcia at the address provided by the plaintiff—PICC's address—it was unable to serve them and returned the summonses as unexecuted.  Doc. No. 6.  The return of service indicates that the "City" was unable to identify the defendants based on the information provided.  *Id.*  Due to these issues with service, the court entered an order on February 17, 2015, which directed that the clerk of court amend the caption to add the City of Philadelphia (the "City") as a defendant for service purposes only.  Doc. No. 7.  The Marshal's Service served the City on June 2, 2015.[5]  Doc. No. 8.

---

[5] The Marshal's Service once again returned the summonses for Gray and Garcia as unexecuted on June 18, 2015. Doc. No. 9.

Garcia filed an answer to the complaint and affirmative defenses on July 9, 2015.  Doc. No. 10.  As one of the affirmative defenses, Garcia asserted that the plaintiff's "claims are barred, in whole or in part, by this failure to comply with the provisions of the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), including but not limited to, the provisions regarding exhaustion of all administrative remedies before commencing a federal suit[.]"  Defendant's Answer, with Affirmative Defenses, to Pl.'s Compl. at 2.

The court held an initial pretrial conference by telephone with the plaintiff and counsel for Garcia on August 14, 2015, and entered a scheduling order on August 18, 2015.  Doc. Nos. 12, 13.  Garcia filed a motion to depose the plaintiff on October 16, 2015, and the court granted the motion on October 19, 2015.  Doc. Nos. 16, 17.

Garcia filed his first motion for summary judgment on December 4, 2015.  Doc. No. 18. In the motion, Garcia asserted that the court should enter summary judgment on his behalf because the plaintiff failed to exhaust his administrative remedies.  Defendant's Mot. for Summ. J. at ECF pp. 7-12.

The plaintiff then filed a document that the clerk of court received on December 17, 2015, but was docketed on December 29, 2015.[6]  Doc. No. 19.  This document, which is 27 pages in length, is almost entirely illegible and extremely disorganized.[7]  *Id.*  It is not even evident from reading the document that the plaintiff filed it in response to receiving the motion for summary judgment.  The only aspect of the plaintiff's submission that court was able to understand, at least as it relates to the allegations in the complaint and this case in general is that the plaintiff requested help and a court-appointed attorney.  *Id.* at ECF p. 1.

---

[6] Because of the nature of the document, the clerk of court's office did not file it right away and sent it to the undersigned's chambers.  Upon receipt in chambers, the document was transferred back to the clerk of court's office for docketing.

[7] To the extent that any part of the document is legible, the original of the document is easier to read than the scanned version.

On January 7, 2016, the court entered an order denying Garcia's motion for summary judgment without prejudice because Garcia did not file it in accord with the undersigned's policies and procedures.  Order at 1, Doc. No. 20.  The court also (1) provided Garcia with leave to file a second motion for summary judgment no later than January 21, 2016, (2) directed the clerk of court to refer the matter to the Prisoner Civil Rights Panel to attempt to locate counsel for the plaintiff, (3) directed the plaintiff to inform the court why the court should not dismiss Grey as a defendant in this matter under Rule 4(m) of the Federal Rules of Civil Procedure, (4) directed the plaintiff to file a "legible and understandable" response to any renewed motion for summary judgment by February 22, 2016, (5) provided a notice to the plaintiff that would assist the plaintiff with responding to the motion for summary judgment, and (6) directed the plaintiff to the precise issue raised in the motion for summary judgment (and the one Garcia would likely raise again in a renewed motion for summary judgment) with instructions that he needed to respond to it.  *Id.* at 1-5.

Garcia timely filed a second motion for summary judgment on January 21, 2016.  Doc. No. 21.  As with his original motion for summary judgment, Garcia again contends that he is entitled to summary judgment in his favor because the plaintiff failed to exhaust his administrative remedies before bringing suit.  *See* Memorandum of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") at 7-13.

After Garcia filed the second motion for summary judgment, the court received three submissions from the plaintiff.  Doc. Nos. 22-24.  The first submission, which the clerk of court docketed on February 16, 2016, is predominantly illegible and almost entirely unintelligible.  *See* Doc. No. 22.  In this document, the plaintiff appears to acknowledge receiving Garcia's second motion for summary judgment.  Doc. No. 22 at ECF p. 1 ("Pertaining to my civil lawsuit No. 14-

6

3819 the attorney Mr. Cooper filed another motion for summary judgment.").[8]  In addition, from what the court can actually interpret, it appears that the plaintiff repeats his claim that Garcia and Grey assaulted him and he references having a misconduct in front of "Sgt. Cheeks" that he sent to an unidentified person/location.  *Id.*  He appears to also generally reference some sort of conspiracy involving corporate corruption and the prison.  *Id.*  The remainder of this first document appears to be another lawsuit that he would like to file (he even attaches a copy of a completed complaint that is also illegible) against other correctional officers that does not appear to relate in any way to the allegations in this case (other than it seems to involve other correctional officers at PICC).  *Id.* at ECF pp. 2-7.  It appears that this incident occurred in 2011. *See id.* at ECF pp. 2, 7.[9]

The plaintiff's second submission is a one-page letter that the clerk of court docketed on February 23, 2016.  Doc. No. 23.  In this document, the plaintiff recognized that the court submitted his case to the Prisoner's Civil Rights Panel for possible appointment of counsel, but he still requested help.  *Id.*  He indicated that he was transferred to a state correctional institution and wanted a new civil rights complaint form to assert claims arising out of an incident that occurred in 2011.  *Id.*  Although difficult to discern due to the plaintiff's poor handwriting, his request for help appeared to relate primarily to his desire to file this additional civil action relating to what allegedly happened to him in 2011.[10]  *Id.*

On February 25, 2016, the clerk of court docketed the plaintiff's third submission.  Doc. No. 24.  In this third submission, which is also almost entirely illegible except for the typewritten

---

[8] Jonathan Cooper, Esquire, of the Philadelphia Law Department represents Garcia in this matter.
[9] The plaintiff has attached a copy of what appears to be a computer printout of a grievance that he filed in 2011 to prohibit his mother's husband, "Mr. Adolph Funches," from visiting him at the prison.  Doc. No. 22 at ECF p. 7.
[10] While impertinent to the court's resolution of Garcia's motion for summary judgment, the plaintiff filed another complaint and application to proceed *in forma pauperis* that the clerk of court docketed on February 24, 2016.  *See Kemp v. OFC Lebesco, et al.*, No. 16-cv-893.

text mentioned below, the plaintiff once again appears to be asking for help.  Doc. No. 24 at ECF p. 1.  Also, instead of filing a separate response to the motion for summary judgment, he copied portions of Garcia's memorandum of law in support of his motion and then marked it up by underlining various sentences and phrases and including handwritten notations in the margins.  *Id.* at ECF pp. 2-8.  Unfortunately, the court cannot read the plaintiff's notations in the margins because the writing is, with the exception of an occasional word or date, illegible.

To date, no attorney from the Prisoner Civil Rights Panel has agreed to represent the plaintiff in this case.  The court has provided the plaintiff ample opportunity to respond to Garcia's motion, even informing him of exactly what he needed to do to properly respond to the motion.  Despite showing an ability to write in a legible fashion and the court's instruction that his submissions must be legible and understandable, the plaintiff has continued to submit documents that the court simply cannot read.  Nonetheless, Garcia has presented the court with an adequate record to resolve the motion for summary judgment and this record includes, *inter alia*, a transcript of the plaintiff's deposition.  As such, the motion for summary judgment is ripe for disposition.[11]

---

[11] On the date that the court is filing this memorandum opinion, the court received yet another submission from the plaintiff that the clerk of court transmitted to the undersigned.  This plaintiff appears to have mailed this submission no later than March 15, 2016 (the postmarked date on the accompanying envelope).  The court reviewed the submission and returned it to the clerk of court for docketing.  It is likely that the clerk of court will not docket this submission until after the court files this memorandum opinion (and accompanying order), which is why the court references it here and without citation to the docket.

As with the plaintiff's other submissions, this recent submission is almost entirely illegible and unintelligible due to the plaintiff's poor handwriting.  From what the court can actually decipher, it appears that the plaintiff is asking about the status of his case.  On one of the later pages, he repeatedly asks for "help."  While the court cannot tell for sure, it appears that throughout the document the plaintiff mentions other issues that are unrelated to the specific allegations against the defendants in this case.  There are also repeated references to "9-11-2001."  There is nothing about this document that compels a different resolution to this case.

## II.      DISCUSSION

### A.      <u>Standard – Motion for Summary Judgment</u>

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning,* 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police,* 71 F.3d 480, 482 (3d Cir. 1995)).  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute").  The non-movant must show more than the "mere existence of a scintilla of

evidence" for elements on which the non-movant bears the burden of production. *Anderson,* 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment. *See Fireman's Ins. Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007). The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587 (citation omitted).

10

## B.      <u>Applicable Record</u>[12]

### 1.      The Applicable Grievance Procedure

Deputy Warden Patricia Powers has served as a deputy warden of the Philadelphia Prison System ("PPS") since 2006.  Def.'s Material Facts as to Which There is No Genuine Issue to be Tried at Ex. B, Aff. of Deputy Warden Patricia Powers ("Powers Aff.") at ¶ 2, Doc. No. 21-3. Deputy Warden Powers is "familiar with the policies and procedures of the PPS, including the policies and procedures that relate to inmate grievances as described in the Philadelphia Prisons Policy ("PPP") . . ., and that [she is] authorized to certify the attached PPS policies and procedures and inmate records of" the plaintiff.  *Id.* at ¶ 3.  These policies and procedures were in effect from July 29, 2005, until March 11, 2014.[13]  *Id.* at ¶ 4.  The grievance procedures were updated in March 2014, but the update did "not affect the requirements for filing a grievance, pursuing appeals with respect to grievances, or inmate retention of grievance copies."  *Id.*[14]

The PPS provides "inmates an internal grievance procedure for administrative resolution of complaints arising from a facility's administration or operation."  Def.'s Material Facts as to Which There is No Genuine Issue to be Tried at Ex. C, PPS Inmate Grievance Procedures Effective July 29, 2005 ("Inmate Grievance Procedures") at ECF p. 2.[15]  This grievance procedure "serve[s] to reduce the need for litigation and afford staff the opportunity to review and correct, if necessary, the PPS' operations."  *Id.*

The PPP provides that "[c]omplete copies of the Inmate Grievance Procedures in English and Spanish will be posted in all housing units, inmate Law Libraries, and social service areas."

---

[12] The court references the record presented only as it relates to the sole argument raised in the motion, *i.e.* whether the plaintiff exhausted his administrative remedies.

[13] Garcia attached a copy of these policies and procedures as Exhibit C to his statement of undisputed material facts. *See* Doc. No. 21-4.

[14] Garcia attached a copy of these updated policies and procedures as Exhibit D to his statement of undisputed material facts.  *See* Doc. No. 21-5.

[15] The pre-March 11, 2014 grievance policy is the policy that applies to the issue presented in this motion.

*Id.* at ECF p. 5.  It also provides that "[d]uring his/her stay in Admissions housing, the inmate will be given the Inmate Handbook (in English or Spanish), which details the entire grievance process.  Orientation will include an explanation of the grievance procedures and will allow for questions and answers."  *Id.*; *see* Powers Aff. at ¶ 7 ("Upon admission to the PPS, all inmates are informed of the prison grievance system and are given an inmate handbook which explains the grievance system.").

The PPP states that "[i]nmate grievance forms will be readily available in the housing units, law libraries and through social services regardless of an inmate's legal, disciplinary, or administrative status."  Inmate Grievance Procedures at ECF p. 5.  In addition, "[e]very inmate is informed of how to obtain, prepare and submit a grievance form," and "[e]very inmate is informed of the levels of appeal for a grievance, and how to appeal a grievance."  Powers Aff. at ¶¶ 8, 9.

The PPP inmate grievance procedure defines a "Grievance" as "[a] written complaint by an inmate on the inmate's own behalf regarding a policy application within a PPS facility, a condition within a PPS facility, an action involving an inmate in a PPS facility, or an incident occurring within a PPS facility."  Inmate Grievance Procedures at ECF p. 2.  An "Informal Grievance" is "[a] grievance communicated by an inmate through face-to-face or similar communication and therefore is not a formal grievance."  *Id.*  A "Formal Grievance" is "[a] grievance that has passed through the informal grievance procedure without being resolved through informal means or a grievance that an inmate initiates in writing through the formal grievance procedure."  *Id.*  The PPP indicates that an inmate may initiate a grievance concerning, *inter alia*, the following issues: (1) "an alleged violation of an inmate's civil, constitutional, or statutory rights;" and (2) "an alleged criminal or prohibited act by a staff member, contract

personnel, volunteer, or other inmate(s)[.]"  *Id.* at ECF p. 3.  Thus, "PPS allows inmates to file grievances for a wide array of problems and conditions, including an allegation that a correctional officer used excessive force against them."  Powers Aff. at ¶ 6.

Regarding the procedure for grieving a particular issue, a PPS inmate may only file a grievance for himself or herself.  Inmate Grievance Procedures at ECF p. 4.  The "inmate may file a formal, written grievance within ten days of the grievable event by completing an Inmate Grievance Form."  *Id.* at ECF p. 6.  "The inmate will fill out the form, attesting that the informal process has occurred, retain the bottom copy as his/her receipt of filing, and file the rest of the form in the appropriate grievance box."  *Id.* at ECF p. 7.  The "[o]fficial grievance forms are carbon-copy forms with multiple differently-colored copies created with the completion of the form.  The inmate grievance procedure requires that inmates retain the bottom copy of any filed grievance for their records."  Powers Aff. at ¶ 10.

The Deputy Warden for Administration is the first level of review for inmate grievances. Inmate Grievance Procedures at ECF p. 7.  Upon receiving and logging in the grievance, the deputy warden may (1) reject the grievance if it "concerns a Non Grievable Issue, is frivolous on its face, or is otherwise inconsistent with Inmate Grievance Procedures" and return it to the inmate within 14 days; (2) resolve the grievance himself or herself within 14 days; or (3) distribute it to an appropriate staff member to resolve and the staff member must return it to the deputy warden with a proposed resolution within 30 days of receiving it.  *Id.* at ECF pp. 7-8.  Once the deputy warden is "satisfied with a recommended resolution/action," the deputy warden will forward it to the warden for review.  *Id.* at ECF p. 8.  The warden then has 14 days of receipt of the deputy warden's decision to approve, deny, or modify the deputy warden's recommended action.  *Id.*  "If the inmate is unsatisfied with the Warden's decision, the inmate has five (5) days

after receipt of the Finding of Inmate Grievance to appeal to the Commissioner, . . . thereby advancing to Level II." *Id.* In Level II of the PPP grievance procedure, the Commissioner conducts the final review of the formal grievance and has 21 days to "make a final determination on the appeal and reply to the inmate." *Id.* The Commissioner's reply "will be in writing, and the inmate will sign to indicate he/she has received notification of the appeal decision." *Id.* Throughout this process, "[e]xpiration of a time limit at any stage of the process shall entitle the grievant to move to the next level of the process, unless the grievant has agreed in writing to an extension of the time for a response." *Id.* at ECF p. 4.

For records retention, the Deputy Warden for Administration logs every grievance submitted by PPS inmates "into the PPS automated information system called Lock & Track ("LAT")." Powers Aff. at ¶ 11. According to the PPP, the Deputy Warden for Administration of each PPS facility maintains "[a]ll records relating to inmate grievances" until disposition of the grievance. Inmate Grievance Procedures at ECF p. 12. These records are "preserved for at least three years following final disposition of the grievance," and they are "[u]ltimately . . . archived according to the City's Record Retention Schedule." *Id.*

## 2. The Plaintiff's Knowledge and Use of the PPP with Respect to the Incident at Issue in This Case

The plaintiff acknowledged that the PICC has an internal grievance procedure. Def.'s Material Facts as to Which There is No Genuine Issue to be Tried at Ex. A, Tr. of Oral Dep. of Samuel Jermaine Kemp 3rd ("Kemp Dep.") at 44, Doc. No. 21-2. The plaintiff is very familiar with the grievance procedure as he has "file[d] a grievance everyday [sic] . . . [f]or four years." *Id.* He believes that he filed "probably like 600" grievances at the PICC before and after the occurrence of the alleged assault forming the basis of this lawsuit. *Id.* at 44-45. It is unclear if

the plaintiff always received a response to his grievances, but he received "a lot" of responses. *Id.* at 45.

The plaintiff claims that he filed a grievance with respect to the alleged assault by the named defendants in this case. *Id.* at 21, 53, 55. He filed it on the day following the alleged assault. *Id.* at 64. Although the plaintiff claims to have filed a grievance, he does not have a copy of it despite having copies of some of his other grievances. *Id.* at 60, 66. The plaintiff never received a response to the grievance that he filed with respect to this incident. *Id.* at 56. He also never filed an appeal. *Id.* at 56, 57, 70. Since he did not receive a response, he filed "a lawsuit so [he] could prove it like that. Like this is the biggest grievance." *Id.* at 57.

To verify whether the plaintiff filed a grievance with respect to the incident at issue in this case, Deputy Warden Powers conducted a search of the LAT Inmate Grievances for grievances submitted by the plaintiff. *Id.* at ¶ 12. Although it appears that the plaintiff filed numerous grievances (although not nearly as many as he claimed to have filed), Deputy Warden Powers was unable to locate a grievance with respect to any conduct by Garcia (or Grey) in August 2012. *Id.* at ¶ 16; Def.'s Material Facts as to Which There is No Genuine Issue to be Tried at Exs. E, F, Doc. Nos. 21-6, 21-7.

## C.    Analysis

In the motion for summary judgment, Garcia argues that he is entitled to summary judgment in his favor insofar as the plaintiff failed to comply with the PPS grievance procedures in two respects.[16] Def.'s Mem. at ECF p. 10. First, Garcia contends that the court should find that the plaintiff never filed a grievance with respect to the alleged August 2012 incident because

---

[16] As the defendant asserting the affirmative defense of failure to exhaust administrative remedies, Garcia bears the burden of proving that the plaintiff failed to exhaust his administrative remedies. *See Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) ("Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant.").

there is no evidence outside of the plaintiff's self-serving deposition testimony that he ever filed a grievance with respect to this incident. *Id.* at 10-12. Second, Garcia asserts that even if the court were to find that there is a disputed issue of fact as to whether the plaintiff filed a grievance, the undisputed evidence in the record shows that the plaintiff never appealed or forwarded the grievance to the Commissioner. *Id.* at 12-13. After reviewing the record, although the court finds that there is a disputed issue of fact as to whether the plaintiff filed a grievance in the first place, this disputed issue does not warrant denial of the motion because even if he filed a grievance, the undisputed evidence shows that the plaintiff failed to exhaust his administrative remedies insofar as he never filed an appeal to the Commissioner as required by the PPS inmate grievance procedure.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "with respect to prison conditions" refers to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion under the PLRA is mandatory. *Woodford v. Ngo*, 548 U.S 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). Prisoners "must . . . exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process." *Id.* (citing *Booth*, 532 U.S. at 734). In addition, "the PLRA exhaustion requirement requires proper exhaustion." *Id.* at 83. Requiring proper exhaustion "eliminate[s] unwarranted federal-court interference with the administration of prisons, and thus seeks to

'affor[d] corrections officers time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93 (quoting *Porter*, 534 U.S. at 525). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91 (footnote omitted). If a prisoner does not properly exhaust his or her administrative remedies, the prisoner cannot file a lawsuit challenging prison conditions in federal court because he or she is procedurally defaulted from doing so. *Spruill v. Gillis*, 372 F.3d 218, 227-29 (3d Cir. 2004); *see Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013) ("Under the PLRA, exhaustion is a precondition for bringing suit under § 1983.").

A prisoner cannot properly exhaust administrative remedies "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83. In addition, there is no "futility" exception to the administrative exhaustion requirement under the PLRA. *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000). There is an exception, however, if prison officials interfere with or impact the prisoner's filing of a grievance. *See Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it."); *Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002) (explaining that "[s]ection 1997e(a) only requires that prisoners exhaust such administrative remedies as are available" and, therefore, if the prisoner plaintiff was correct that prison officials told him that he needed to wait until the termination of an investigation before he could file a formal claim yet never told him that they had completed the investigation, "the formal grievance proceeding . . . was never available to" the plaintiff (internal quotation marks omitted)). This exception applies to excuse a failure to exhaust "under certain limited circumstances." *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d

Cir. 2005).  The prisoner would have to show that he or she "was misled or that there was some extraordinary reason he [or she] was prevented with complying with the statutory mandate." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2005); *see Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000) (concluding that the plaintiff satisfied section 1997e(a)'s exhaustion requirement where the evidence showed that the Office of Professional Responsibility reviewed the plaintiff's excessive force claim and correctional officers told him that his grievances would not reach the grievance coordinator).

Here, the record undisputedly demonstrates that the PPS has a grievance system available to inmates such as the plaintiff, and that this system covers claims such as those the plaintiff is raising in this case, namely, the alleged violation of his constitutional rights by two correctional officers at the PICC.  The plaintiff was also familiar with this grievance system as he claims to have filed hundreds of grievances during his time at the PICC.  He claims that he filed a grievance with respect to his claims in this case, but he does not have a copy of the grievance form and Deputy Warden Powers was unable to locate the grievance in the prison grievance retention system (although she was able to locate other grievances the plaintiff filed).  Based on this evidence, Garcia argues that the court should conclude that the plaintiff never filed a grievance because he cannot produce a copy of it and it is not located in the grievance retention system.  Def.'s Mem. at 11. Garcia also claims that we should not consider the plaintiff's self-serving deposition testimony that he filed a grievance because all of the other evidence in the record contradicts this testimony.  *Id.*

With regard to sworn statements by the non-movant, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citation and internal quotation marks omitted).

As for "whether a nonmoving party's deposition testimony is insufficient to withstand summary judgment, the assertions must be compared to the other evidence of record to determine whether they are 'sufficient for a rational factfinder to credit the plaintiff's testimony, despite its self-serving nature.'" *McBride v. American Substance Abuse Prof'ls, Inc.*, 917 F. Supp. 2d 419, 426-27 (E.D. Pa. 2013) (quoting *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012)).

Also, the "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge." *See Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010) (agreeing with *Pavey v. Convey*, 544 F.3d 739, 740 (7th Cir. 2008)). The court must resolve this issue "even if that determination requires the resolution of disputed facts." *Small*, 728 F.3d at 269 (citing *Drippe*, 604 F.3d at 781).

The only evidence in the record that the plaintiff filed a grievance relating to the alleged assault by Garcia and Grey is his deposition testimony. This testimony is contradicted by all of the other evidence in the record, including the plaintiff's failure to maintain a copy of the grievance as required by the PPP. In addition, the court notes that there are inconsistencies between the plaintiff's testimony and the other evidence presented by the defense. In this regard, the plaintiff claims that he was filing a grievance almost every day, yet Deputy Warden Powers was able to locate only 12 such formal grievances that were entered into PICC's grievance retention system. According to the PPP, the PICC should have had a record of any grievance filed by the plaintiff, yet Deputy Warden Powers could only locate a fraction of the 600 formal grievances supposedly filed by the plaintiff.

In many instances, the plaintiff's statements, which appear to be self-serving and uncorroborated by the all of the other objective evidence in the record, would warrant a

conclusion that, at best, the plaintiff is mistaken that he filed a grievance.  *See, e.g.*, *Paladino v. Newsome*, No. 12-cv-2021, 2015 WL 1344817, at *2 (D.N.J. Mar. 23, 2015) (concluding that prisoner plaintiff failed to file a grievance with respect to an alleged assault, even though the plaintiff claimed he filed a grievance, because all of the other evidence in the record contradicted the plaintiff's "self-serving assertions").  Nonetheless, this court believes that the most prudent course in most instances would be to hold an evidentiary hearing to resolve the factual dispute as to whether the plaintiff filed a grievance.  *See Pavey*, 604 F.3d at 742 (discussing procedure for trial court to resolve disputed issues relating to whether a prisoner exhausted administrative remedies); *see also Jacobs v. Pittsburgh Police Dep't*, No. 08-cv-470, 2014 WL 3401656, at *4 (W.D. Pa. July 10, 2014) (adopting report and recommendation that recommended district court hold an evidentiary hearing to "resolve the factual disputes among the parties regarding Plaintiff's exhaustion of administrative remedies").

The court will not schedule an evidentiary hearing in this case, however, because even if the plaintiff were able to credibly demonstrate that he filed a grievance with respect to the incident at issue in this case, the undisputed evidence in the record shows that he did not file an appeal to the Commissioner as required by the PPP.  The PPS's grievance policy expressly provides that "[e]xpiration of a time limit at any stage of the process shall entitle the grievant to move to the next level of the process."  Inmate Grievance Procedures at ECF p. 4.  Thus, "[i]f, at the expiration of the time in which the Warden is to render his decision on the initial grievance, no decision has been made, an inmate is entitled to file a level two appeal to the Commissioner."  *Wilson v. Burke*, No. 09-cv-2961, 2012 WL 4108926, at *5 (E.D. Pa. Sept. 18, 2012).  As there is no evidence in the record that the plaintiff appealed to the Commissioner when the deputy warden or warden did not respond to his purportedly-filed grievance, and the plaintiff

acknowledges that he filed this action instead of seeking an appeal, he did not properly exhaust his administrative remedies.[17]  *See id.* (concluding that prisoner plaintiff bringing section 1983 action for alleged unconstitutional acts while he was incarcerated in a City of Philadelphia prison failed to exhaust his administrative remedies where he filed initial formal grievances but failed to appeal to the Commissioner when warden did not render decision on initial grievance even though PPS policy provided that he could do so after the expiration of the time for the warden to respond); *McKinney v. Giorla*, No. 11-cv-4188, 2013 WL 553047, at *3 (E.D. Pa. Feb. 14, 2013) (concluding that plaintiff, who was housed at PICC, failed to exhaust his administrative remedies before filing a section 1983 action because even though the plaintiff received no response to his grievances he "admit[ted] he took no steps to appeal because there was no response" and "[u]nder the [Philadelphia Prisons Policies and Procedures the plaintiff] could have forwarded his grievances to the Commissioner").[18]  Therefore, even after examining the evidence of record in the light most favorable to the plaintiff as the party opposing summary judgment, and after resolving all reasonable inferences in the plaintiff's favor, there is no genuine issue of material fact that the plaintiff failed to exhaust his administrative remedies with respect to the alleged incident in August 2012 when Garcia and Grey assaulted him.[19]  Accordingly, Garcia is entitled to summary judgment in his favor.

---

[17] The court notes that, chronologically, the plaintiff commenced this action after the passage of well more than a year from the time that the plaintiff should have appealed to the Commissioner.

[18] Based on the timing of the alleged unconstitutional acts in *Wilson*, it appears that the PPS grievance policy applicable in *Wilson* was identical to the applicable grievance policy here.  *See Wilson*, 2012 WL 4108926 at *5 & n.61-68 (describing grievance procedure).  It also appears that the court may have reviewed the same grievance policy in *McKinney*, although it is more difficult to reach this conclusion because there is no reference to the date of the alleged unconstitutional activity in the *McKinney* opinion.

[19] The plaintiff referenced in his deposition to being placed in "the hole" after the alleged incident in August 2012. *See* Kemp Dep. at 24, 25, 56.  Other than referencing his placement in "the hole," the plaintiff at no time argues that this prevented him from pursuing any administrative remedies in this case or that prison officials otherwise misled him or rendered him incapable of pursuing his administrative remedies.  In addition, with regard to his placement in "the hole," the plaintiff indicated that they had "cut [him] loose early."  *Id.* at 56.

### D.     <u>The Plaintiff's Claims Against Grey</u>

As indicated above, the Marshal's Service has not been able to effect service of process on Grey, even though the clerk of court docketed the complaint in August 2014.  Although the plaintiff contends that Grey was one of the correctional officers that assaulted him in August 2012, he has not been able to provide the Marshal's Service with any further information for it to properly identify Grey.  In addition, the City has been unable to identify Grey insofar as it represents that "[t]here is no one working for the Philadelphia Prison System with the last name of Grey whose first name begins with "R." and another correctional officer has the badge number that the plaintiff alleges is Grey's badge number.  *See* Defendant's Answer, with Affirmative Defenses, to Pl.'s Compl. at 1 n.1, Doc. No. 10.

In the court's January 7, 2016 order, the court requested that the plaintiff inform the court why the court should not dismiss "Correctional Officer Mr. R. Grey #4382" as a defendant insofar as he has not been served with process in this case.  Order at 3-4 & n.4, Doc. No. 20. Although the plaintiff's mostly unintelligible submissions after the filing of this order appear to indicate that he believes that Grey was involved in his assault (and the plaintiff indicated as such during his deposition), he has failed to address the service issue.  He has also failed to provide sufficient information for the Marshal's Service to serve Grey.  As such, the court will dismiss the claims against Grey under Rule 4(m) of the Federal Rules of Civil Procedure.[20]

### III.     CONCLUSION

The plaintiff has acknowledged that he was aware of the grievance procedure at PICC. Yet, even though he claims to have filed a grievance with respect to the alleged assault against him in August 2012, he admits he never attempted to appeal by submitting the grievance to the

---

[20] The court incorporates the portion of the January 7, 2016 order addressing this issue into this opinion.

Commissioner when he did not receive a response to his grievance.  Instead, he commenced the instant litigation claiming that it would serve as the "biggest grievance." This was improper.

There is no dispute that the plaintiff failed to follow the PPS grievance procedure when he did not seek an appeal with the Commissioner.  As such, there is no genuine issue of material fact that he failed to properly exhaust his administrative remedies prior to commencing this action.  Accordingly, Garcia is entitled to summary judgment in his favor based on the plaintiff's failure to exhaust.  Additionally, the court will dismiss the plaintiff's claims against Grey under Rule 4(m) based on the failure to timely serve him with process in this case.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.